**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| In re<br><br>**FELIX P. LUGO,**<br><br>                              **Debtor**<br><br>**WESTERN UNION FINANCIAL SERVICES, INC., as successor in interest to Vigo Remittance Corp.,**<br><br>                              **Plaintiff**<br><br>v.<br><br>**FELIX P. LUGO,**<br><br>                              **Defendant** | Chapter 7<br>Case No. 10-21211-FJB<br><br><br><br><br>Adversary Proceeding<br>No. 12-1263 |

### MEMORANDUM OF DECISION

This matter was held for trial on the Complaint of Western Union Financial Services, Inc. (the "Plaintiff"), successor to Vigo Remittance Corp., against debtor Felix Lugo (the "Debtor") for a determination that its claim against the Debtor (the "Claim") is excepted from discharge by operation of 11 U.S.C. § 523(a)(2), (a)(4), and (a)(6).  The Claim includes the principal amount of $24,621.20, plus (through the date of trial) accruing interest of $10,525.81 and attorneys' fees of $11,008.94.  At trial, the Plaintiff, for its case, presented the testimony of one of its employees, an individual who is based in and travelled from Costa Rica, introduced eight exhibits, and, with the Debtor's consent, introduced two affidavits of attorneys to support its attorneys' fees claim.  The Debtor, who is not an attorney and does not speak English but understands it to an extent, has represented himself throughout this adversary proceeding; he testified in his own defense but presented no other evidence.  In addition to the

complaint, the pleadings include a counterclaim in which the Debtor alleges that the Plaintiff violated the Fair Credit Reporting Act, the Fair Credit Billing Act, Massachusetts General Laws Chapter 93A, Massachusetts General Laws Chapter 176D, and the Fair Debt Collection Act. However, the only facts alleged in the counterclaim are that the Plaintiff "incorrectly reported" and "incorrectly entered" the amounts allegedly due from the Debtor. This memorandum of decision constitutes the Court's findings of fact and conclusions of law.

**Findings of Fact**

The Claim arises out of a business relationship in which the Debtor, through his company, Bell Continental, Inc., signed an agency agreement (the "Agreement" or the "Agency Agreement") with the Plaintiff to provide money remittance services using the Plaintiff's worldwide remittance system. The business model was as follows: a customer engaged the Debtor to wire money through the Plaintiff's system to a foreign recipient by providing cash or other collected funds to the Debtor; the Debtor then deposited the funds into his account and entered the transaction into the system; and the recipient would then be able to collect the cash, less service fees, within as little as an hour of the deposit. On the next business Monday, Wednesday, or Friday, the Debtor was to ensure that the money provided by the customer was deposited in a trust account with the Plaintiff. The Plaintiff proved that, as of August 6, 2006, $24,621.20 that the Debtor reported having received was missing from the trust account, and it so notified the Debtor. Moreover, as of the time the chapter 7 case was filed, the Debtor had not paid this amount to the Plaintiff. From the evidence that (i) the Plaintiff reported that he had received $24,621.20 but (ii) the funds in question were never deposited into the account and (iii) the Debtor has not otherwise accounted for them or explained the inconsistency, I conclude that the Debtor deliberately misappropriated $24,621.20 that he received from a customer in trust for the Plaintiff.

The Agency Agreement contains relevant provisions. Section 3 of the Agreement states that "[Debtor] shall accept and hold all monies collected for transmission . . . as fiduciary for [Plaintiff.]" The

2

account into which the funds were to be deposited is referred to as the Trust Account in a demand letter dated August 17, 2011, but I do not find that phrase used in the Agreement; nor have I been directed to it. In addition, the Agreement included a "Personal Party Indemnity and Guarantee" that the Debtor signed in his own name. By that provision, the Debtor guaranteed the performance and the payment terms of the Agreement. The Agreement also provided, at several places, that the Debtor, as guarantor and indemnitor, would pay the costs of any collection and any reasonable attorneys' fees. The Plaintiff's witness testified that the Debtor, as a fiduciary of the Plaintiff, misappropriated funds from the Trust Account. For his defense, the Debtor testified that after the Plaintiff terminated his agency, he could no longer have access to the account information and could not determine the basis for the Plaintiff's claims. He also testified that he had hired an attorney and that he had settled the dispute with the Plaintiff and been released from liability. He produced no written release, could not respond when the Plaintiff's witness denied that there was any release, and testified that he had searched for such a release and found none. I find, in accordance with Plaintiff's witness's testimony, that the witness was in charge of this relationship since the dispute began, that no release had been given to the Debtor, and that he would have had to approve any such release.

**Discussion**

The Plaintiff contends that the resulting debt for recovery of the misappropriated $24,621.20, plus interest and attorney's fees, is excepted from discharge as a debt for defalcation while acting in a fiduciary capacity. Section 523(a)(4) provides, in relevant part, that a discharge does not discharge an individual debtor from any debt for "defalcation while acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4). To be acting in a fiduciary capacity, which is a matter of federal and not state law, a party must be acting pursuant to an express or technical trust, not an implied trust. *Davis v. Aetna Acceptance Corp.*, 293 U.S. 328, 333 (1934). The § 523(a)(4) exception requires proof of three elements. First, the debt must result from a fiduciary's defalcation under an express trust; second, the debtor must have

3

acted in a fiduciary capacity with respect to the trust; and third, the transaction in question must be a "defalcation" within the meaning of bankruptcy law. *Raso v. Fahey (In re Fahey)*, 482 B.R. 678, 687 (B.A.P. 1st Cir. 2012). "Defalcation" in § 523(a)(4) requires either (i) moral turpitude, bad faith, or other immoral conduct, or (ii) in lieu of these, an intentional wrong, which includes not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent, such as where the fiduciary consciously disregards, or is willfully blind to, a substantial and unjustifiable risk that his conduct will turn out to violate a fiduciary duty. *Bullock v. BankChampaign, N.A.*, 133 S.Ct. 1754, 1759 (2013). That risk "must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation." *Id*. at 1760.

  The Plaintiff has satisfied its burden under § 523(a)(4). The first two elements of this basis for excepting the Plaintiff's claim from discharge are easily met. The Agency Agreement made the Debtor an express fiduciary of the Plaintiff. See Exh. 2, ¶3(a). And it was in his capacity as a fiduciary that the Debtor acted with respect to the transaction and funds at issue. Finally, I find that the facts were sufficient to establish that the Debtor's acts constituted a defalcation. The Plaintiff proved through its witness and exhibits that $24,621.20 in cash was entrusted to the Debtor and not paid over to the Plaintiff under the Agency Agreement. Although the Debtor directed the Plaintiff to pay the recipients and thereby implied that he was holding the funds to cover the transaction in the Trust Account, this was not the case. At a minimum, the Debtor did not offer any explanation at the trial as to the fate of the money entrusted to him. Lacking an explanation from the only person who can explain, I can only conclude that the Debtor appropriated the funds to his own use, in knowing contravention of his fiduciary obligation to the Plaintiff.

On the basis of the same findings of fact, the debt is also excepted from discharge as one for willful and malicious injury within the meaning of § 523(a)(6). This subsection requires that the debt be for an injury that is both willful and malicious. An injury is willful if the actor intended "the consequences of the act," the injury, and not just the act that caused injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998). That is the case here: the Debtor essentially converted to his own use property that, in trust, belonged to the Plaintiff. "Malicious" requires the injury to have been "wrongful," "without just cause or excuse," and "committed in conscious disregard of one's duties." *Printy v. Dean Witter Reynolds, Inc.*, 110 F.3d 853, 859 (1st Cir.1997). Malice thus has both objective and subjective elements: the injury must have been objectively wrongful or lacking in just cause or excuse; and the debtor must have inflicted the injury in "conscious disregard" of his duties, meaning that he has to have been aware that the act was wrongful or lacking in just cause or excuse. *Burke v. Neronha (In re Neronha)*, 344 B.R. 229, 231-32 (Bankr. D. Mass. 2006). The injury here was both objectively wrongful, a theft, and committed with knowledge of its wrongfulness.

Having found the debt excepted from discharge under subsections (a)(4) and (a)(6), I need not also address the count under subsection (a)(2)(A).

The Debtor's counterclaims were never even mentioned by the Debtor at the trial and appear to have been abandoned. Accordingly, they need not be addressed. No relief shall enter on them.

Finally there is the Plaintiff's demand for judgment on the underlying liability. It is not clear that the Court has subject matter jurisdiction over the underlying claim. It arose prior to bankruptcy and would affect only the Debtor's continuing in personam liability, not the estate or the bankruptcy case. Moreover, proceedings to establish liability are already under way in state court. Accordingly, for lack of clear subject matter jurisdiction, the Court will abstain under 28 U.S.C. § 1334(c)(1) as to the

underlying liability and limit the judgment to the issue of dischargeability.  The Court will enter a

separate judgment of nondischargeability.

Date:  October 3, 2013                                  _____
                                                        Frank J. Bailey
                                                        United States Bankruptcy Judge